IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 04-301-TUC-JMR (HCE) |
| | ) | |
| Plaintiff, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Javier Francisco Albelais-Valenzuela, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

On September 14, 2005, this matter came on for hearing on Defendant's Motion to Dismiss Indictment for Due Process Violations in Deportation Proceedings.   For the following reasons, the Magistrate Judge recommends that the District Court deny Defendant's Motion.

At the September 14, 2005 hearing, the following witnesses testified: (1) Defendant; and (2) Moises Vallejo, Special Agent with the Immigration and Customs Enforcement within the Department of Homeland Security.  Both parties indicated that they had no further exhibits, affidavits, or testimony to present.  (TR. 5)

**FACTUAL & PROCEDURAL BACKGROUND**

Defendant Javier Francisco Albelais-Valenzuela was indicted for illegal re-entry after deportation pursuant to 8 U.S.C. § 1326 and enhanced by 8 U.S.C. § 1326(b)(1) on February 11, 2004.  It was then alleged that:

> On or about January 4, 2004, at or near Tucson, in the District of Arizona, Javier Francisco Albelais-Valenzuela,..., an alien, entered and was found in the United States of America after having been denied admission, excluded, deported, and removed therefrom at or near Nogales, Arizona on or about May 2, 2003, and not having obtained the express consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission thereto....

(February 11, 2004 Indictment)

The Defendant was later indicted for illegal re-entry after deportation by superceding indictment pursuant to 8 U.S.C. § 1326 and enhanced by 8 U.S.C. § 1326(b)(1) on April 6, 2005. The principal difference in indictments is the date Defendant was denied admission, excluded, deported, and removed from the United States of America: November 10, 1997.

Prior to his deportation on November 10, 1997, the Defendant was served with an Order to Show Cause (OSC) notice on October 10, 1996 to show why he should not be deported. (Government's Response, Ex. B) The Defendant was charged in the OSC with being deportable as a person who entered at or near San Ysidro, California, on or about March 1, 1993 and was excludable or inadmissable because he had previously been deported from the United States of America on October 7, 1992 through San Ysidro, California, and had not obtained the consent of the Attorney General to re-enter the United States, pursuant to section 241(a)(1)(A) of the Immigration and Nationality Act. (Id.) Moreover, he was charged with being deportable for having entered the United States of America without inspection on March 1, 1993 at or near San Ysidro, California, pursuant to section 241(a)(1)(B) of the same Act. (Id.)

The Defendant's deportation hearing of August 12, 1997 was administratively closed because the Defendant was not present; was then currently serving time in the Arizona Department of Corrections; and had to be located in order to calendar his hearing. (Government's Response, Ex. A, p.1)

- 2 -

The Defendant's deportation hearing was rescheduled for October 2, 1997.  At that time, he advised Immigration Judge Richardson (hereinafter IJ) that he spoke English.[1]  (Id. at p.2) Attorney William DeSantiago appeared for the Defendant at the behest of the Defendant's sister and was given leave to look into Defendant's immigration case to prepare inasmuch as he had just met with the Defendant for the first time.  (Id.) At Defendant's October 2, 1997 deportation hearing, Immigration and Naturalization Attorney Pierce informed the IJ that given the hearing was going to be continued he would later file allegations that the Defendant's prior DUI convictions were aggravated felonies. (Id. at p.3) The deportation hearing was continued to November 4, 1997. (Id. at p.4)

At the Defendant's November 4, 1997 hearing, Attorney DeSantiago advised the IJ that the Defendant speaks English; that he had explained to the Defendant the nature of the proceeding, other rights and matters; and that the Defendant admitted the allegations contained in the OSC. (Id.) Attorney DeSantiago asked for voluntary departure on behalf of the Defendant.  (Id.)  The IJ received into evidence exhibits[2] related to an I-213; a warrant for deportation; and a conviction for DUI leaving the scene of the accident.

Voluntary departure could be granted in the discretion of an immigration judge under section 244(e) of the Immigration and Nationality Act, then codified at 8 U.S.C. § 1254. It

---

[1]It should be noted that in *United States v. Javier Francisco Albelais-Valenzuela,* CR 01-707-TUC-JMR, CV 02-006-TUC-JMR, Defendant filed a Motion to Vacate, Set Aside, or Correct Sentence under U.S.C. § 2255.  By way of affidavit, the Defendant stated that he "...speak[s] only Spanish.  I understand some English but not enough to converse in that language." (Defendant's Motion to Vacate, Set Aside, or Correct Sentence under U.S.C. § 2255,  Ex. A) At the September 14, 2005 hearing, defense counsel stated that although Defendant is able to speak English, Defendant is more comfortable speaking Spanish. (TR. 21-22) Defendant was assisted by an interpreter at this hearing.

[2]The immigration judge identified Exhibits "...2, being the 213; 3, the Warrant for Deportation, uh, 4 is a Conviction CR-24-907, Driving Under the Influence while License Suspended, Canceled, Revoked or Refused; and 5 is a Conviction, CR-36-113, DUI Leaving the Scene of an Accident,..." with no objection from Defendant's then attorney, Exhibits 2, 3, 5 were received into evidence.  (Government's Response, Ex. A, p.5 )

required an alien to have the ability to depart the United States at his own expense and be a person of good moral character for the preceding five years.[3]

Aggravated felony allegations were not submitted.  Instead, Immigration and Naturalization Attorney Barkley at Defendant's November 4, 1997 deportation hearing argued that the Defendant's "felony DUI would be of moral turpitude for which he served more than 180 days..."[4] and his immigration history for a prior re-entry were factors that the immigration judge should consider in denying voluntary departure. (Government's Response, Ex. A, p. 5) The IJ cited the Defendant's two convictions and re-entry after deportation in finding the Defendant not to be a person of good moral character and denied him voluntary departure. (Id. at p.6)

The IJ  ruled that the Defendant through counsel: (1) admitted the allegations of re-entry following deportation without permission and entry without inspection; and (2) conceded that  deportability on both allegations had been proven by clear and convincing evidence. (Id.) The IJ concluded that the Defendant was not eligible for any other form of relief. (Id. at p.7)

The Defendant, through counsel, reserved his right to appeal and was advised that appeal must be perfected by December 4, 1997. (Id.) The Defendant was physically deported from the United States of America on November 10, 1997.

The Defendant is not charged with re-entry after deportation subsequent to a conviction for an aggravated felony pursuant to 8 U.S.C. § 1326(b)(2), which would otherwise subject the Defendant to a possible maximum 20 years of incarceration.  Rather,

---

[3]A person who lacked good moral character was one who, among other things, was a habitual drunkard; had served an aggregate period of incarceration of 180 days; had been convicted of an aggravated felony; or for any other reason.  8 U.S.C. § 1101(f).

[4]The Defendant was convicted in Pima County Superior Court in CR-24-907 on September 6, 1996 for DUI on a suspended, cancelled, revoked, or refused license and given 2.5 years; and CR 36-113 on October 8, 1996 for DUI leaving the scene of an accident and given 1.5  years. (Defendant's Motion, Ex. A; Government's Response, Ex. A, p.5)

he is charged with re-entry after deportation subsequent to a felony conviction pursuant to 8 U.S.C. § 1326(b)(1) where the Defendant could instead face a maximum ten years of incarceration.

At the time of the Defendant's deportation hearing on November 4, 1997, a felony DUI was considered to be a crime of violence and thus an aggravated felony pursuant to section 101(a)(43) of the Immigration and Nationality Act, codified at 8 U.S.C. §1101(a)(43). Three years and nine months after the Defendant was deported, the Ninth Circuit Court of Appeals ruled that a felony Driving Under the Influence With Injury to Another was not a crime of violence and, thus, not an aggravated felony. *United States v. Trinidad-Aquino,* 259 F.3d 1140 (9th Cir. Aug. 8, 2001). Moreover, the United States Supreme Court has subsequently held that a felony DUI is not a crime of violence and consequently not an aggravated felony. *Leocal v. Ashcroft,* ___ U.S . ___ 125 S.Ct. 377 (2004).

Defendant initially argued in the instant Motion that in light of *Trinidad-Aquino* and *Leocal*, his 1997 deportation was invalid to the extent that it was premised on his convictions for aggravated felonies based on his prior DUI convictions. (Defendant's Motion, pp.2-3) In his Reply to the Government's Response, Defendant only suggests that the IJ "probably believed" or "may have believed" that the Defendant's prior DUIs were aggravated felonies. (Defendant's Reply, pp. 4-5) At the September 14, 2005 hearing on the instant Motion, Defendant conceded that he was not charged with illegal reentry after deportation subsequent to a conviction for an aggravated felony. (TR. 7)

The Defendant's deportation hearing was not premised on a conviction for an aggravated felony. First, Immigration and Naturalization Attorney Pierce only stated that he intended to file allegations that the Defendant's prior DUI convictions were aggravated felonies. There is nothing in the record to support or corroborate that was in fact done. Second, documents submitted at the Defendant's deportation hearing were exhibits evidencing the Defendant's felony convictions for DUI in Pima County Superior Court. Again, nothing in the record supports or corroborates the contention that they were admitted

- 5 -

as evidence of aggravated felonies.  Third, a thorough review of the transcript of Defendant's deportation hearing on November 4, 1997 clearly shows that Immigration and Naturalization Attorney Barkley as well as the IJ at no time characterized Defendant's felony DUI convictions as aggravated felonies.  Rather, they are referred to simply as felonies or convictions.

Consequently, with the record now before this Court, the IJ did not premise the Defendant's deportation on convictions for aggravated felonies.

## DISCUSSION

### Requirements for Collateral Attack

A defendant accused of illegal re-entry after deportation may attack the underlying deportation order:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that--
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

The underlying order of deportation is "fundamentally unfair" if (1) a defendant's due process rights were violated by defects in his underlying deportation process, and (2) he suffered prejudice as a result of the defects.  *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1048 (9th Cir. 2004) To establish prejudice, the Defendant need not show that he actually would have been granted relief.  Rather, he need only show that there was a plausible ground for relief from deportation.  *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir. 2000).

### A.) Exhaustion of Administrative Remedies and Opportunity for Judicial Review

The Defendant posits that his due process rights were denied because meaningful opportunity for judicial review of the underlying deportation was not possible having been

deported from the United States before the expiration of time to seek appeal.[5]   Further, having been deported six days after his hearing, he could not thus perfect his appeal to argue entitlement to 212(c) or 212(h) relief of which the IJ failed to inform him and, therefore, his waiver of appeal could not be considered and intelligent.  *United States v. Pallares-Galan,* 359 F.3d 1088, 1096 (9th Cir. 2004).

The record is clear that the Defendant was represented by counsel.  The record is also clear that the Defendant through counsel was asked if he wished to reserve his right to appeal, which he did, and the IJ informed him that the appeal must be perfected by the close of business on December 4, 1997.  At the hearing on the instant Motion, Defendant testified that he did not ask his lawyer to pursue an appeal. (TR. 35-36) Defendant further testified that he was unaware of the laws at that time.  (Id.)  The record also reflects that in a prior immigration proceeding in 1990, Defendant appealed a deportation order two days after that order was issued.  (TR. 51)

Here, the Defendant has not presented anything to suggest that he wished to appeal and that his counsel did not follow through.  Even if the ill-timed physical deportation of the Defendant six days after his hearing did not allow the Defendant to exhaust his administrative remedies, as set forth below, there was then no relief available to the Defendant and the IJ ruled as much.  Nonetheless, the Defendant states that the IJ failed to advise him of any potential grounds for relief under section 212(c), section 212(h), or voluntary departure.  Defendant also states that he would have had some basis for at least applying for adjustment of status to remain in this country to marry his girlfriend.  (TR. 16)

---

[5]Defendant maintained in his Reply that he was deported on November 10 1997. (Reply, p.2) Although Defendant initially testified at the hearing on the instant Motion  that he was deported the same day as his November 4, 1997 deportation hearing (TR. 35), the record reflects that he was deported on November 10, 1997.  (Defendant's Motion, Ex. A) When Defendant was asked on re-direct whether he disagreed with the November 10, 1997 deportation date, he stated: "well, if there are documents...they would say when I went to court, when I left, everything."  (TR. 42)

<u>1.)  Availability of Section 212(c) Relief</u>

Former Immigration and Nationality Act section 212(c), codified at 8 U.S.C. § 1182(c), was available only to certain long-term residents.  To qualify, a person had to have accrued seven years of lawful unrelinquished domicile.  Time spent as lawful permanent resident, lawful temporary resident, asylee, refugee or certain other status could be counted toward the seven years.  *Robles v. INS,* 58 F.3d 1355 (9th Cir. 1995); 8 C.F.R. § 212.3(f)(2). Such section 212(c) relief was essentially available to one in the United States under a legally recognized status and who sought to perpetuate that status.

Although Defendant concedes that section 212(c) may have been unavailable to him because that provision was repealed in 1997, he also argues that under the former rules governing immigration proceedings, section 212(c) relief may still have applied to his case. (TR. 8, 74) The Court need not resolve whether section 212(c) relief was still available at the time of Defendant's deportation proceeding because, as set forth below, Defendant was not entitled to such relief.

On October 10, 1996, when served with the OSC, the  Defendant had no legally recognized status in the United States that would bring him within the purview of section 212(c).  Defendant states that in 1989, when he was involved in deportation proceedings not at issue here, he received a work permit which he characterized as "maybe not legal status in the country, but...some type of temporary permission to remain in the United States until there was a final determination on his immigration matters."  (TR. 27) The Government states that Defendant received employment authorization documents and that these documents did not grant Defendant any temporary status.  (TR. 28) Nonetheless, any work authorization permit or documents terminated upon Defendant's deportation from the United States in 1992–well before the 1996-1997 proceedings at issue here.

At the November 4, 1997 deportation hearing, the  Defendant conceded the allegations made in the  OSC that he was not legally in the United States; that he re-entered without permission following deportation; that he re-entered without inspection; and that he had

- 8 -

previously been deported from the United States through San Ysidro, California, on October 7, 1992.[6]  (*See* TR. 23 (Defense counsel stated at the hearing on the instant Motion: "we're not contesting that he wasn't deportable."))   It is well-settled that:

> where the record, "fairly reviewed by an individual who is intimately familiar with the immigration laws--as IJs no doubt are--raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must inform the alien of this possibility and give him the opportunity to develop the issue." *Moran-Enriquez [v. INS,* 884 F.2d 420, 423 (9th Cir. 1989)].  Immigration Judges "are not expected to be clairvoyant; the record before them must fairly raise the issue. *Id.* at 422

*United States v. Muro-Inclan,* 249 F.3d 1180, 1183 (9th Cir. 2001).   Clearly, the Defendant by word and deed could not qualify for section 212(c) relief.  Nor does the Defendant offer plausible grounds for 212(c) application.   Therefore, the IJ was not required to inform Defendant of such relief.  *Id.*

### 2.)  Availability of Section 212(h) Relief

Section 212(h) applies to persons who are otherwise inadmissible under grounds relating to moral turpitude offenses, drug offenses where a single conviction of simple possession of 30 grams of marijuana has resulted, prostitution and commercialized vice, five year sentence for two convictions, and foreign diplomats asserting immunity from prosecution.  Immigration and Nationality Act section 212(h), 8 U.S.C. § 1182(h).  Once an alien meets any one of the aforementioned threshold grounds, he may be eligible for relief from deportation under limited circumstances by a waiver of excludability.

Section 212(h) permits a waiver where: (1) the alien is the spouse, parent or child of a citizen or a lawful permanent resident; (2) the exclusion would result in extreme hardship to the citizen or lawfully resident relative; (3) the alien's admission would not be contrary

---

[6]Unlike CR 01-707-TUC-JMR, CV 02-006 where Defendant in a Motion to Vacate, Set Aside or Correct Sentence under U.S.C. § 2255 maintained that an IJ in a different deportation proceeding from the one at issue here failed to inform him of his right to seek relief because he had adjusted his status and had an application pending with Immigration and Naturalization Service.

to the national welfare, safety or security of the United States; and (4) the Attorney General exercises discretion in the alien's favor. *United States v. Arce-Hernandez,* 163 F.3d 559, 563 (9th Cir. 1999).   Review of the instant record reveals that Defendant has failed to establish that he plausibly qualifies for any one of the threshold grounds and for the conjunctive requirements of waiver of excludability as set out above. *See e.g., Muro-Inclan*, 249 F.3d at 1185  (defendant failed to establish prejudice resulting from due process violation where "[t]he hardships [he] alleged...represent the common results of deportation...and do not represent the type of additional evidence of extreme hardship beyond the normal deprivation of family support").  Therefore, Defendant has failed to show that the IJ should have advised him about the opportunity to seek relief under section 212(h).

### 3.) Adjustment of Status per Section 245, codified at 8 U.S.C. §1255

Defendant argues that the IJ should have advised him that he could have married his girlfriend and sought an adjustment of status.  Defendant raised this argument for the first time at the September 14, 2005 hearing on his Motion to Dismiss.  The argument was not raised in his Motion to Dismiss or in his Reply to the Government's Response.  Defendant did not cite to any specific statutory provisions that would support his argument. The Government addressed the issue by citing section 245(i) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, which at the time of Defendant's deportation hearing allowed an alien to become a permanent resident in certain circumstances that included admissibility and the immediate availability of an immigrant visa.  "Every alien who applies for adjustment of status under 8 U.S.C. § 1255 bears the burden of proving that he meets the statutory requirements for eligibility." *Rashtabadi v. INS,* 23 F.3d 1562, 1568-1569 (9th Cir. 1994). *See also United States v. San Juan,* 314 F.3d 384 (9th Cir. 2002) (denying defendant's collateral attack of deportation order because defendant was ineligible to adjust immigration status at the time of his deportation hearing).

Defendant testified that he asked the IJ whether there was something he could do to avoid deportation, and the IJ responded: "Well, marry your wife and that way you can fix

your papers, and that way she could ask for it."  (TR. 37) The transcript of the deportation

hearing does not reflect this exchange.  (See Government's Response, Ex. A) Instead, the

transcript shows that the IJ discussed "other means of adjustment" and considered the fact

that Defendant's children were under the age of 21.  (Government's Response, Ex. A, pp.5-6)

The IJ also discussed the prospect of Defendant being able to obtain a visa as follows:

> IJ:          Well, his common-law wife can't sponsor him for a visa so how
>              is he gonna immigrate?
> DeSantiago:  Well, if they would marry, she would be able to.  So in the
>              future....
> IJ:          So that's all contingent?  Any other equities that, uh, that I
>              should consider?
> DeSantiago:  Well, apart from the three children, that's probably the reason that he
>              came back your honor, the re-entry was....(unintelligible).

(Id. at pp.6-7) Upon dictating his findings, the IJ stated that the Defendant "is eligible for no

other form of relief."  (Id. at p. 7)

Accordingly, the record reveals that the IJ considered whether the Defendant was

eligible for adjustment and concluded that he was not.  *See Muro-Inclan,* 249 F.3d at 1183

("Immigration judges are not expected to be clairvoyant; the record before them must fairly

raise the issue" that the alien may be eligible for relief in order to trigger the requirement that

the immigration judge render such advice).

Defendant has not proffered any evidence or argument showing that plausible grounds

exist regarding his eligibility for adjustment of status other than the mere claim that such

would have been available and, thus, the IJ should have so advised him. Based on the record

before the Court, there is no "reasonable possibility that...[Defendant] would have been

eligible for relief" thus requiring the IJ to advise him that he could seek adjustment of status.

*Muro-Inclan*, 249 F.3d at 1183.  Defendant has not demonstrated plausible grounds for

concluding that he was eligible for adjustment of status at the time of his deportation hearing.

### 4.)  Failure to Advise the Defendant of Voluntary Departure Relief

Defendant is correct that fundamental unfairness can occur where an immigration

judge fails to advise an alien in a removal proceeding that he is eligible for voluntary

departure under 8 U.S.C. § 1254 (1995).  *United States v. Ortiz-Lopez,* 385 F.3d 1202 (9th Cir. 2004).  However, the record is clear that he in fact was afforded an opportunity to obtain voluntary departure relief; availed himself of such opportunity; and was determined to be statutorily ineligible for voluntary departure on November 4, 1997 because he did not meet the "good moral character" requirement.  Since he was statutorily ineligible for voluntary departure, a direct appeal could not have yielded any other result.  *United States v. Gutierrez-Alba,* 128 F. 3d 1324, 1327 (9th Cir. 1997) (*citing United States v. Proa-Tovar,* 975 F.2d 592, 595 (9th Cir. 1992)).

B.)  Fundamental Unfairness / Prejudice

Here, a direct appeal could not have yielded a different result.  Defendant Albelais-Valenzuela would have been deported just the same.  The lack of direct appeal because the Defendant was deported six days after his hearing only resulted in his having left the country at an earlier time.  Had the Defendant perfected his appeal, he would have stood before the Board of Immigration Appeals just as he does now.  *Proa-Tovar,* 975 F.2d at 595.

The Court has not been provided with anything in the record that supports prejudice evidenced by any plausible grounds of relief that might have been available to him on appeal.  *See Muro-Inclan,* 249 F.3d at 1186 ("...here we are presented  only with the conclusory opinion of the immigration lawyer and the very brief, nonspecific declaration from Appellant's wife–...."); *United States v. Gonzalez-Valerio,* 342 F.3d 1051 (9th Cir. 2003) (to show prejudice under section 1326(d), defendant must be eligible for relief sought); *United States v. Alvarado-Delgado,* 98 F.3d 492, 494 (9th Cir. 1996) (No prejudice where Defendant failed to "show[] that he would have been eligible for any form of discretionary relief").  Instead, the Defendant argues that prejudice should be presumed while at the same time failing to meet his burden of proving such by plausible grounds for relief.  *United States v. Leon-Leon,* 35 F.3d 1428, 1432 (9th Cir. 1994) (*citing Proa-Tovar,* 975 F.2d at 595).

**CONCLUSION**

It has been six years and two months from when Defendant was deported to Mexico on November 10, 1997 to when he illegally re-entered after deportation in January 2004. Defendant Albelais-Valenzuela has not shown he was prejudiced by alleged due process violations at the 1997 hearing. The lack of such evidence leads the Court to conclude that he was properly deported in 1997. His concession that he re-entered following deportation without permission and that he entered without inspection, and thus was deportable, at his deportation hearing on November 4, 1997 forecloses any argument that he was not. *See Alvarado-Delgado,* 98 F.3d at 494.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review of the record, deny Defendant's Motion to Dismiss Indictment for Due Process Violations in Deportation Proceedings.

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: CR 04-301-TUC-JMR.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

The Clerk is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

DATED this 26th day of September, 2005.


_____
Héctor C. Estrada
United States Magistrate Judge


- 13 -